UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CASE NO. 5:21-cv-00173-AW-MJF

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

     Plaintiff,

v.

CARMEN SCOTT and JULIE SCOTT,

     Defendants.

_____/

**PLAINTIFF'S MOTION FOR DETERMINATION OF
ENTITLEMENT TO RECOVER ATTORNEY'S FEES,
<u>WITH SUPPORTING MEMORANDUM OF LAW</u>**

Pursuant to Local Rule 54.1 and the Court's order dated March 11, 2022 (DE 57), Plaintiff Hartford Life and Accident Insurance Company ("Hartford") moves for an order deeming Hartford entitled to recover its reasonable attorney's fees incurred in this interpleader action, to be paid from the interpleaded funds. The grounds for this motion are fully set forth in the accompanying memorandum of law.

**<u>MEMORANDUM OF LAW</u>**

Interpleader is a remedial device permitting an "innocent stakeholder, who … claims no interest in an asset and does not know the asset's rightful owner, to avoid multiple liability by asking the court to determine the asset's rightful owner."

*Jackson v. Wellington & Assoc., LLC*, 389 F. Supp.3d 1199, 1206-07 (N.D. Ga. 2019) (citation omitted). Interpleader is thus appropriately sought by a disinterested stakeholder confronted with the prospect of "adverse claims that could expose it to multiple liability on the same fund." *Ohio Nat. Life Assur. Corp. v. Langkau*, 353 Fed.Appx. 244, 248 (11th Cir. 2009).

In an action for interpleader relief, attorney's fees are "generally awarded, in the discretion of the court, to the plaintiff who initiates the interpleader as a mere disinterested stakeholder," *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986), with the awarded amount typically paid "from the interpleaded funds." *Hartford Life and Acc. Ins. Co. v. Reyes*, No. 6:21-cv-1390, 2022 WL 218487, *1 (M.D. Fla., Jan. 25, 2022). This general rule has a general exception, however, for instances in which the interpleader action and its associated expenses arise from the plaintiff's "normal course of business." *Campbell v. N. Am. Co. for Life and Health Ins.*, No. 3:04-cv-1118, 2007 WL 2209249, *6 (M.D. Fla., July 30, 2007) (citing *In re Mandalay Shores Coop. Housing Ass'n, Inc.*, 21 F.3d 380, 382-83 (11th Cir. 1994)). Although the exception is sometimes applied to deny fees to insurance companies that have brought suit to interplead disputed policy proceeds, *id.*, courts following the normal-course-of-business rule ***do*** award fees to interpleading insurers if the case involves "disputes that do not ordinarily arise" or

2

the insurer incurs expenses "not of the type regularly incurred by an insurance company." *Mandalay Shores*, 21 F.3d at 383 n.2 (citations omitted).

In the present case, as demonstrated below, much of the expense incurred by Hartford in this action was occasioned by the highly unusual responses of the defendant/claimants, who -- instead of consenting to interpleader as disputants normally do when that remedy is sought by a disinterested stakeholder -- needlessly opposed and resisted Hartford's good-faith efforts to deposit the proceeds with the Court and exit the lawsuit, and even sought to assert futile counterclaims against Hartford.  Consequently, the claimants rather than Hartford should in fairness bear the expense of effectuating the interpleader.

## I.  Procedural Background

Hartford brought suit under Federal Rule of Civil Procedure 22 on September 1, 2021, seeking to interplead the proceeds of Basic Life insurance coverage provided to the late Christopher Scott in the amount of $132,000 (the "Proceeds") under a group life insurance policy issued by Hartford to Mr. Scott's employer (the "Policy").  As explained in the Complaint (DE 1), interpleader was appropriate because the Proceeds were the subject of competing claims asserted by Defendant Carmen Scott ("Carmen") and Defendant Julie Scott ("Julie"). Julie, through her counsel, answered the Complaint on September 28, 2021 (DE 7), claiming entitlement to the Proceeds and bringing cross-claims against Carmen. Defaults were

initially entered against Carmen, who subsequently retained counsel and moved successfully to set aside the defaults (DE 14, 16). Carmen answered the Complaint on November 8, 2021, asserting her own entitlement to the Proceeds (DE 18).

Via e-mail dated October 21, 2021, Hartford's counsel furnished Julie's counsel with a copy of the Policy, pursuant to a request from Julie's counsel.[1] Subsequently, on November 19, 2021, Hartford's counsel forwarded to Julie's counsel, pursuant to the latter attorney's request, a document obtained from the employer confirming that Christopher Scott's Basic Life coverage under the Policy did not exceed $132,000.[2]

On November 30, 2021, Hartford filed a motion for leave to deposit the Proceeds in the Court's Registry and for customary interpleader relief including discharge from further liability under the Policy and dismissal from the lawsuit (DE 25) (the "Interpleader Motion"). Prior to filing the Interpleader Motion, Hartford's counsel conferred with Carmen's counsel but was unable to secure her agreement to the relief sought. (*Id.*, pg. 5.) Hartford's counsel was unable to reach Julie's counsel before filing the Interpleader Motion (*id.*), but Julie later filed an opposition

---

[1]     A copy of the referenced correspondence and attachment is attached hereto as **Exhibit A**.

[2]     A copy of the referenced correspondence and attachment is attached hereto as **Exhibit B**.

memorandum incorrectly claiming not to have received a copy of the Policy and not to know the amount of the Proceeds, and also asserting a need to take discovery from Hartford (DE 28).

On December 21, 2021, Carmen served upon Hartford 17 interrogatories, a request for production seeking 30 categories of documents, and 12 requests for admission.[3] These discovery requests sought, among other things, documents and information concerning (a) the job qualifications and duties of every Hartford adjuster or investigator who "in any way handled" the subject claim, (b) Hartford's underwriting manual in effect at the time of Christopher Scott's death, (c) Hartford's claim evaluation procedures, (d) the dates and amounts of premium payments received by Hartford, and (e) the individual Hartford employees who received such premium payments. (After obtaining an extension of time, Hartford served responses to Carmen's voluminous discovery requests on February 10, 2022.)

On January 7, 2022, the Court issued an order on the Interpleader Motion (DE 34). As the Court noted, there was no dispute that Hartford was a disinterested stakeholder faced with competing claims to funds in its possession, thus presenting, in the Court's words, a "clear case for interpleader." (*Id.*, pg. 1-2.) The Court nevertheless denied the motion without prejudice based on the inaccurate

---

[3]     Copies of the referenced interrogatories, request for production, and requests for admission are attached hereto as **Exhibits C, D, and E**, respectively.

5

representations of Julie's counsel that Julie had not received the Policy and did not know the amount of money involved.  In the same order, the Court directed the parties to confer regarding those issues and submit a joint status report.

On January 27, 2022, Hartford filed its Renewed Motion for Interpleader (DE 39) (the "Renewed Interpleader Motion"), confirming by declaration (made under penalty of perjury) that (a) Christopher Scott had Basic Life coverage under the Policy in the amount of $132,000 and Supplemental Life Coverage under the Policy in the amount of $264,000, (b) Christopher Scott had no other coverage under the Policy, (c) the proceeds of Mr. Scott's Supplemental Life coverage had previously been paid to the named beneficiary of that coverage, without contest, and (d) the purpose of the instant lawsuit was to deposit the Proceeds into the Court's registry in the amount of $132,000, thus enabling the Court to determine the correct recipient. (DE 39-1.)

On January 28, 2022, the parties submitted their Joint Report Regarding Scope of Interpleader (DE 41), pursuant to the Court's directive in its order of January 7, 2022. Although there was no dispute that the Proceeds in the amount of $132,000 comprised the sole fund at issue in the interpleader action, Julie and Carmen insisted, through their respective counsel, that Hartford "**must interplead any and all proceeds of any other coverage(s) that Christopher Scott had under any Hartford policy in effect at the time of his death, irrespective of whether such**

**other proceeds are or could be the subject of competing claims**." (DE 41, pg. 2) (emphasis added).

On that same day, January 28, 2022, Carmen and Julie filed separate motions for leave to amend their pleading and/or add new parties to the case for the purpose of asserting counterclaims and third-party claims against Hartford (DE 40, 42, 43.) The proposed new claims generally sought declaratory judgment against Hartford with respect to one or more unspecified policies in addition to the Policy at issue in the interpleader action (DE 40-1, 42-1, 43-1). Hartford, of necessity, prepared and filed legal memoranda opposing Carmen and Julie's respective motions on February 18, 2022 (DE 51,52).

Carmen and Julie also filed separate memoranda in opposition to the Renewed Interpleader Motion, on January 31, 2022 and February 4, 2022, respectively (DE 44, 45). Carmen argued that interpleader should be denied, and that her counterclaims should go forward, based on her belief that Christopher Scott had coverage under "additional policies" issued by Hartford. (DE 44, pg. 2.) Specifically, she asserted that "policies for Basic Accidental Death and Dismemberment and Voluntary Accidental Death and Dismemberment appear to exist." (*Id.*) Julie also opposed interpleader, claiming not to know "what … funds are available under the policy" (DE 45 at 3), even though the amount of available

funds had previously been alleged in the Complaint, and later confirmed by an uncontroverted declaration made under penalty of perjury, to be $132,000.

Following a telephonic hearing on all pending motions (DE 56), the Court on March 11, 2022 issued its order granting the Renewed Interpleader Motion, denying Carmen and Julie's respective motions for leave to assert claims against Hartford, and authorizing Hartford to file a motion for attorney's fees within 30 days. (DE 57).

## II. Argument

Federal courts in interpleader cases routinely "discharge [disinterested stakeholders] from liability and dismiss [them] from the action" when "there is a single fund at issue and adverse claimants to that fund," particularly in "cases involving competing claims to life insurance proceeds." *Orseck, P.A. v. Servicios Legales de Mesoamerica*, 699 F. Supp.2d 1344, 1349 (S.D. Fla. 2010). Indeed, a disinterested stakeholder is ordinarily "entitled to an early discharge from the action." *Id.* at 1353. In the present case, Hartford should have been discharged and dismissed early in this proceeding, and it would have, but for the claimants' obstinate insistence on seeking to expand the lawsuit beyond its proper scope.

Although Julie asserted in her opposition to Hartford's initial Interpleader Motion that she had not been provided the Policy nor been told the amount of the Proceeds, Hartford had in fact furnished her counsel with a copy of the Policy as well as the benefits information (which was also pleaded in the Complaint). *See* pg.

8

3-4, *supra*.  Following the Court's denial without prejudice of the Interpleader Motion, it soon became clear that Julie and Carmen were resisting timely interpleader because they wanted to compel Hartford to interplead the proceeds of any and all Hartford policies under which Christopher Scott had coverage at the time of his demise, irrespective of whether such policies were or could have been subject to competing claims.  *See* pg. 6, *supra*. Indeed, they demanded the inclusion of other policies even after Hartford filed a declaration, executed under penalty of perjury, confirming that Christopher Scott's Basic Life coverage in the amount of $132,000 comprised the entirety of unpaid benefits under the Policy with respect to Mr. Scott. *Id.*, pg. 6-7.

The claimants' dogged insistence on expanding the lawsuit to include other policies irrespective of their suitability for interpleader was manifestly misguided. First, since it was undisputed that Hartford was a disinterested stakeholder with respect to the Proceeds, Hartford was entitled to interpleader relief as to those funds without further ado. *See Orseck*, 699 F. Supp.2d at 1353-54.  In addition, while interpleader is an equitable remedy that insurers and other stakeholders may voluntarily seek under appropriate circumstances, they have no duty or obligation to do so.  *See Ben. Trust Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) (holding that although an insurer faced with competing claims is free to file an interpleader action, the insurer's "access to that opportunity does

not impose a duty," as the mere fact of the procedure's availability "does not make its use mandatory"); *Phila. Indem. Ins. Co. v. Great Falls Rescue Mission*, 548 F. Supp.3d 995, 1003 (D. Mont. 2021) (noting that interpleader is "simply an equitable tool available to insurance companies should they wish to avoid expending funds in defense of multiple claims").

In a more typical interpleader action, "all that is necessary" for the stakeholder's counsel to do is "the preparation of a petition, the deposit in the court or posting of a bond, service on the claimants, and the preparation of an order discharging the stakeholder." *Nat. Life Ins. Co. v. Alembik-Eisner*, 582 F. Supp.2d 1362, 1372 (N.D. Ga. 2008) (citing Wright's Fed. Prac. and Proc., § 1719).  Here, as recounted above, Hartford was required to file *two* interpleader motions due to the claimants' unwarranted opposition.  *See* pg. 4-6, *supra*.  It was also required to oppose *two* patently inappropriate motions for leave to bring claims against the company, as well as respond to voluminous discovery requests having no discernible relevance to any matter before the Court. *Id.*, pg. 5.

The normal-course-of-business rule, properly understood, only precludes fee awards that reimburse an insurer for "expenses normally incurred as part of a typical interpleader case." *Union Sec. Ins. Co. v. Hockensmith*, No. 5:17-cv-228, 2019 WL 430892, *3 (E.D. Ky., Feb. 4, 2019).   Because this lawsuit -- which should have been a typical interpleader case from which Hartford made an early and uneventful

exit -- was unnecessary prolonged and complicated by Julie and Carmen's unusual litigation decisions and conduct, Hartford respectfully contends that its litigation activities well exceeded what an interpleading insurer faces in the normal course of its business. Consequently, Hartford's fees incurred in this action should be recoverable from the interpleaded funds. *See Alembik-Eisner*, 582 F. Supp.2d at 1372-73 (awarding fees to interpleading life insurer because case was "not particularly simple" and defendant's counterclaim "did serve to protract the proceedings"); *Hockensmith*, *supra*, at * 4 (awarding fees to interpleading insurer where claimant "unnecessarily multiplied this litigation by filing counterclaims and multiple motions to which [insurer] was forced to respond").

## CONCLUSION

This lawsuit was not a typical, ordinary, simple interpleader action. Because its unusually adversarial, protracted nature was the result of Defendants' litigation decisions and was in no way the fault of Hartford, the company's legal expenses were not part of its normal course of business and should be recoverable.

**WHEREFORE**, the Court should deem Hartford entitled to recover from the interpleaded funds, upon proper motion and proof pursuant to Local Rule 54.1(A), its reasonable attorney's fees incurred in the instant litigation.

## <u>Local Rule 7.1(C) Certificate</u>

Pursuant to Local Rule 7.1(C), the undersigned attorney certifies that counsel for Hartford has conferred via e-mail with Whitney Page, Esq., counsel for Carmen Scott, and M. Brad Gibson, Esq, counsel for Julia Scott, in a good faith attempt to resolve the issues raised in this motion, but no agreement was reached.

## <u>Local Rule 7.1(F) Certificate</u>

This motion/memorandum contains 2,404 words, excluding those excepted by the rule from counting toward the word limit.

Respectfully submitted,

*/s/ Jonathan M. Fordin*
Jonathan M. Fordin, Esq.
Florida Bar No. 371637
Jerel C. Dawson, Esq.
Florida Bar No. 152390
*jfordin@shutts.com*
SHUTTS & BOWEN LLP
200 South Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Telephone:  305-347-7390
Fax:  305-347-7790
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been filed using the CM/ECF system which will transmit the filing via electronic mail to Counsel for Julie Scott, M. Brad Gibson, Esq., McGrath Gibson, LLC, 6117 Atlantic Blvd., Jacksonville, FL 32211, eservice@learnyourrights.com and Counsel for Carmen Scott, Whitney Page, Esq., Law Offices of Jason Turchin, 2883 Executive Park Drive, Ste. 103, Weston, FL 33331, whitney@victimaid.com, this 29th day of March, 2022.

/s/ Jonathan M. Fordin
Jonathan M. Fordin, Esq.